# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROGELIO NAVARRO, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:08-cv-606 |
| | ) | |
| ZIMMER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Rogelio Navarro, Jr. was fired from his job as a purchasing agent at Zimmer, Inc. in April of 2007. Navarro claims this firing was a result of discrimination based on his age, race, color, and/or national origin. But Zimmer says that Navarro was fired because he allowed a valuable pricing agreement to expire without notifying senior management. Zimmer now seeks summary judgment [DE 26] on all claims. For the reasons explained below, the motion is **GRANTED**.

## FACTUAL BACKGROUND

Navarro is Hispanic and was 55 years old at the time he was fired. [DE 33-2 at 25.] Navarro began working at Zimmer in 1987 as a Senior Buyer and was promoted to the position of Purchasing Agent in 1992. [*Id.*] At the time of his firing, Navarro was the Purchasing Agent in the Capital Equipment Group at Zimmer. [DE 28-1 at 2-3.] Navarro was responsible for, among other things, negotiating million-dollar contracts and pricing agreements for equipment purchases. [*Id.* at 4-7.] One of his duties as a Purchasing Agent was to ensure that pricing agreements did not expire and to notify management of any upcoming expirations. [DE 28-2 at 1-2.] Navarro's direct manager from 2003 to 2007 was the Director of Purchasing, Susan Spurgeon. [*Id*. at 1.]

Problems for Navarro started in 2006 when Spurgeon issued him a "final written warning" for events arising out of his role as the Purchasing Agent responsible for the acquisition of a "Grinder," which cost upwards of $742,000. [*Id.* at 2-3.] In January of that year, Spurgeon received a message from a manager in Zimmer's manufacturing division that the Grinder was capable of performing only a subset of the functions that she and the manager understood it would be capable of performing. [*Id.* at 2.] Navarro had not informed Spurgeon of the functionality issues with the Grinder and had not followed purchasing documentation procedure in all respects with regard to the supporting documents for the purchase agreement for the Grinder. [*Id.*] In his deposition, Navarro admitted that he led manufacturing personnel to believe that he had talked with Spurgeon about the issues with the Grinder when in fact he had not. [DE 28-1 at 11.] The final written warning that Navarro received stated that further issues would lead to discipline up to and including termination of employment. [DE 28-8 at 5.] Navarro was also given a performance counseling document that noted specific performance deficiencies and that directed him to, among other things, "[k]eep management team aware of any significant issues associated with a purchasing agreement." [*Id.* at 6.]

In January of 2007, Navarro received his annual performance review. [DE 28-9 and 28-10.] The review was generally positive (an overall average rating of 3.1 out of 4), but the review did note in the "development areas" section that Navarro should "[a]nticipate/address risks and work to resolve in a timely manner" and "anticipate upcoming issues and recommend course of action to overcome setbacks." [DE 28-10 at 1.]

In March of 2007, two months after that review, Spurgeon learned from another purchasing agent that one of Navarro's significant pricing agreements with a company called

Mazak had expired at the end of 2006. [DE 28-2 at 4.] Spurgeon claims that Navarro had not informed her of the expiration of this agreement. [*Id.*] Spurgeon investigated the matter and found that while Navarro had negotiated an extension of the Mazak agreement through the end of 2006 (it had been due to expire on August 1, 2006), he then allowed the agreement to expire without notifying management either before or after the expiration. [*Id.*] According to Spurgeon, the expiration of the Mazak agreement caused Zimmer to risk losing significant price discounts amounting to over $60,000. [*Id.*] Navarro does not dispute that he let the contract expire; however, he testified at his deposition that at some point in late February or early March of 2007 he did tell Spurgeon that the contract had expired. [DE 33-6 at 13.]

On March 22, 2007, Navarro met with Spurgeon, Human Resources Manager Kevin Williamson, and Acting Strategic Sourcing Director Bill Fliotsos to discuss the situation. [DE 28-2 at 4.] The details discussed at this meeting are disputed. Spurgeon and Williamson claim that the Mazak agreement was discussed and that Navarro did not provide a satisfactory explanation as to why he failed to advise management of the expiration of that agreement. [DE 28-2 at 4-5 and DE 28-11 at 3.] Navarro's deposition testimony about that meeting is somewhat more ambiguous. Navarro testified that he was read a written document that told him he was being investigated and that he was suspended for five days, at which point the possibility of termination would be determined. [DE 33-6 at 7-8.] Navarro testified that when he heard the written statement informing him of his suspension he was "caught off guard" and did not understand at the time that it was related to the expiration of the Mazak agreement. [*Id.*]

After the meeting Spurgeon concluded that she could no longer trust Navarro with responsibility for managing significant expenditures covered by either contracts or pricing

3

agreements. [DE 28-2 at 5.] Spurgeon thus recommended Navarro's termination to Williamson, who in turn approved it. [DE 28-2 at 5 and DE 28-11 at 3.] On April 10, 2007, Navarro was notified that his employment was terminated. [DE 28-11 at 3.] Five months later, on September 14, 2007, Navarro filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission. [DE 28-11 at 36-42.] After the EEOC issued a Dismissal and Notice of Suit Rights, Navarro filed the present suit against Zimmer on December 3, 2008, alleging that Zimmer engaged in a pattern of discriminating, harassing, and retaliating against him because of his age, race, color, and national origin.

The real factual dispute between the parties is whether Navarro's handling of the Mazak agreement was in fact the catalyst for his termination or whether it later became just a convenient pretext cooked up by Zimmer to explain the firing. In arguing that the Mazak agreement was the precipitating event, Zimmer points to the affidavits of Spurgeon and Williamson that the agreement was discussed at the meeting. [DE 28-2 at 5 and DE 28-11 at 3.] Zimmer further points to a letter from Williamson dated April 11, 2007, which among other things stated that Navarro had been terminated for "poor performance" and a "willful failure to substantially perform your duties with the Company." [DE 33-1 at 2.] Finally, Zimmer cites a subsequent letter from Williamson dated June 5, 2007, which provided Navarro with a summary of the reasons for his termination:

> To summarize the circumstances of your termination of employment, the precipitating event was the fact that you let the Mazak Pricing Agreement expire, thereby causing Zimmer to lose negotiating leverage on a multi-million dollar arrangement. The agreement was originally set to expire in August 2006, but you were granted an extension by Mazak until the end of year 2006. That date came and went, and the agreement expired. On March 6, 2007, another Purchasing Agent found out about the expiration when reviewing quotes for equipment for Puerto Rico. The expired agreement could have cost Zimmer as much as 2% in

> rate negotiation on not only the $3 million dollars of equipment quoted, but all other quotes in 2007. When questioned about the expired agreement, you could only say that you had sent an updated pricing agreement proposal to Mazak in December of 2006 but had not received communication back from Mazak concerning Zimmer's terms. You did not produce any extenuating circumstances as to why the agreement could not have been renewed on time. You also admitted you did not keep your own Management team informed as to the status of the agreement or that it, in fact, had been expired for over 2 months.

[DE 33-2 at 8.] Zimmer argues that these explanations are all consistent and that the later, more detailed explanation is simply an elaboration on the original justifications. [DE 36 at 5.]

On the other hand, Navarro argues that this has all been ginned-up as a way of papering over the discriminatory reasons for his firing. He points to his testimony that the Mazak agreement was not mentioned at the March 22, 2007 meeting or in the March 28, 2007 telephone call he had with Williamson. [DE 33-6 at 8.] He also cites his letter to Williamson dated March 30, 2007, which does not mention the Mazak agreement. [DE 33-2 at 4.]

**DISCUSSION**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). Employment discrimination cases, while often turning on factual questions, are nonetheless amenable to summary judgment when there is no genuine dispute of material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *Cliff v. Board of School Comm'r*, 42 F.3d 403, 409 (7th Cir.

1994).

Three claims within Navarro's Complaint are still pending: 1) discrimination based on his age pursuant to Age Discrimination in Employment Act of 1967; 2) discrimination based on his race, color, or national origin pursuant to Title VII; and 3) retaliation for exercising his protected rights (by voicing his complaints about discrimination). That last of those three claims – the retaliation claim – can be quickly disposed of because Navarro's Response brief did not discuss the retaliation claim, and so that claim has been abandoned. *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (a party opposing summary judgment waives claims to which it fails to respond or develop on summary judgment).

This leaves us with Navarro's ADEA claim and his Title VII claim. The ADEA provides that it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race [] or national origin." 42 U.S.C. § 2000e-2(a)(1).

To prevail on a discrimination claim under either the ADEA or Title VII, Navarro may proceed under either the direct or indirect method. *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). Under the direct method, a plaintiff must present direct and/or circumstantial evidence that "'points directly' to a discriminatory reason for the employer's action." *Id.* Under the indirect method, a plaintiff must adhere to the familiar burden-shifting formula set forth in

6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 672. In this case, Navarro has stated that he is proceeding "under the direct method" [DE 32 at 1].[1]

In proceeding under the direct method, Navarro must point to either direct evidence or circumstantial evidence that shows that there was a discriminatory reason for his discharge, and the burden is on him to demonstrate that a genuine issue of material fact exists for trial. *See Markel v. Bd. of Regents*, 276 F.3d 906, 910 (7th Cir. 2002). Navarro has not met his burden in this case. Navarro bases his argument that he was terminated with discriminatory intent solely on circumstantial evidence that Zimmer "has given inconsistent, ambiguous, and contradictory reasons" for the termination. [DE 32 at 10.] But the evidence Navarro provides does not support the conclusion that discrimination played a part in his firing.

First, even accepting Navarro's version of events (as I must at this point), I don't find Zimmer's various explanations to be "inconsistent, ambiguous, and contradictory." When Navarro first met with management and was suspended, he was told it was because Zimmer had lost confidence in him. When he was officially terminated, he was told it was a result of poor performance. And when he was given further detail in the June 5, 2007 letter, it was explained that "the precipitating event was the fact that you let the Mazak Pricing Agreement expire, thereby causing Zimmer to lose negotiating leverage on a multi-million dollar arrangement."

---

[1] Navarro's claim would also fail under the indirect method of proof. Under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating among other things that he was meeting the defendant's legitimate performance expectations and that his employer treated similarly situated employees outside of the protected class more favorably. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (Title VII claim); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) (ADEA claim). Given Navarro's loss of a valuable account, he cannot make out a *prima facie* case that he was meeting Zimmer's legitimate performance expectations. Nor has he pointed to any similarly situated employee outside of his protected class that was treated more favorably than he was.

These three statements are not inconsistent: Zimmer 1) lost confidence in Navarro 2) as a result of his poor performance in 3) handling the Mazak Pricing Agreement.

Moreover, even if these statements could be characterized as inconsistent or contradictory, they are still insufficient circumstantial evidence to prove that Navarro's discharge was motivated by a discriminatory intent. The Seventh Circuit has held that, under the direct method of proof,

> circumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Atanus*, 520 F.3d at 671(internal quotations omitted). At best, Navarro could hope to pigeonhole his circumstantial evidence into the first category as "ambiguous oral or written statements." But even then, such evidence has to "allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010) (quoting *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003)). Thus, absent at least a "minimal showing that the real reason" for Navarro's firing was based on age, race, color, or national origin, his "direct claim fails." *Id.* at 299.

Navarro has simply not pointed to any evidence whatsoever that the "real reason" for his termination was his age, race, color, or national origin. The only "evidence" that even makes a pass at satisfying this requirement still falls well short of the mark. For instance, Navarro claims in his Response brief that his supervisor "told him she was forced to promote a younger,

8

Caucasian, new male employee 'so he would not fail.'" [DE 32 at 5.]. But, as Zimmer points out, this claim is a mischaracterization of Navarro's deposition testimony, in which there is no mention that this promotion *was based on* the employee's age, race, color or national origin or that the supervisor wanted the employee to succeed because of these factors. [DE 33-6 at 28-32.] And in any event, this brief aside isn't proof of anything as it relates to *Navarro's* termination.

Navarro also claims that he "was told by another manager that she had complained to HR about mistreatment, it do not [*sic*] good, and it was futile. She added that things actually got worse after she complained." [DE 32 at 5.] But again, Navarro points to no evidence that this alleged mistreatment was based on age, race, color or national origin. Finally, Navarro argues that he "knew of a non-while Instrument Buyer who complained about discrimination without success and was given the 'cold shoulder' by management and co-workers afterward." [*Id.*] Zimmer, however, points to Navarro's deposition testimony, which indicates that this "cold shoulder" was from "co-workers and people on the factory floor," not management. [DE 36 at 12.] Moreover, once again, even if a "cold shoulder" had come from management, it would hardly amount to sufficient circumstantial evidence that *Navarro* was terminated as a result of his age, race, color or national origin.

## CONCLUSION

Thus, even construing all inferences in his favor, Navarro has not provided sufficient evidence that Zimmer fired him with a discriminatory intent. Accordingly, Defendant Zimmer, Inc.'s Motion for Summary Judgment [DE 26] is **GRANTED**. The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendant Zimmer, Inc., stating that Plaintiff Rogelio Navarro, Jr. is

9

entitled to no relief. The clerk shall treat this civil action as **TERMINATED**. All pending dates and motions in this case are **VACATED**.

    **SO ORDERED.**

    ENTERED: May 9, 2011

                                        s/ Philip P. Simon
                                        PHILIP P. SIMON, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT